**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| THE BOARD OF EDUCATION ) | |
| OF THE CITY OF CHICAGO, ) | |
| A MUNICIPAL CORPORATION, ) | |
| Defendant ) | **Jury Trial Demanded.** |
| ) | |

**COMPLAINT**

NOW COMES Plaintiff, John Doe, complaining of Defendant the Board of Education of the City of Chicago, a municipal corporation, alleges as follows:

**STATEMENT OF THE NATURE OF THE CASE**

1. Plaintiff is a former Lincoln Park High School ("LPHS") student and former basketball player for the 2019-2020 school year. Plaintiff was the face of one of this incredibly successful basketball teams and a model Chicago Public School student. That is until he reported a sexual assault that occurred against a female by certain members of the basketball team. In so doing, the wrath of the school was placed upon Plaintiff who jeopardized the entire team and season and essentially revealed the lack of protections that existed in Chicago Public Schools. And so, he faced intense and heated retaliation, harassment and bullying as the face of the program was now covered and benched. All of this was reported to Chicago Public Schools who -- angered by the embarrassment which jeopardized the popularity and ability of team to continue – did nothing to protect Plaintiff and ratified the methodical and vindictive plan of retaliation known and endorsed by the Defendant. The failure by the officers of Defendant the Board of Education of

1

the City of Chicago ("Defendant Board") to support Plaintiff and protect his identity after reporting sexual misconduct led to Plaintiff experiencing significant harassment and isolation from his former teammates on the basketball team. He also lost significant exposure to opportunities to play basketball at the collegiate level, due to coaches isolating him and not advocating to colleges for him. Defendant did not play again for the team, and was forced to transfer schools, leaving his friends and school behand at the worst time. If not enough, the transfer created problems relative to how his grade point average was calculated This case is now brought to seek redress for retaliation for reporting an incident prohibited by Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681.

2. Plaintiff has filed this Complaint under a pseudonym for the reasons stated in the simultaneously filed Motion to Proceed under a Pseudonym.

## JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. § 1331, which provides federal courts jurisdiction over all claims arising out of the Constitution, treaties, and laws of the United States.

4. Jurisdiction over the Plaintiffs' state law claims is proper under 28 U.S.C § 1367 as they arise out of the same set of facts and circumstances as Plaintiffs' federal law claims.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) as a substantial part of the events giving rise to the Plaintiffs' claim occurred in this judicial district.

## PARTIES

6. Plaintiff John Doe is a former student of Lincoln Park High School, and former basketball player for the Lincoln Park High School Boys' Basketball Team.

7. Plaintiff is an Illinois citizen attending college out of state, who returns home during breaks from school.

8. Defendant Board is an Illinois Municipal Corporation which oversees Chicago Public Schools ("CPS") which is the former employer of multiple administrators and staff involved in this matter. Defendant Board maintains offices at 1 N Dearborn Suite 950, Chicago, Illinois, 60602.

**FACTS**

The Roundball Classic Tournament.

9. During the 2019-2020 school year, the Lincoln Park High School Varsity Basketball team (the "basketball team") was an elite team, ranked at the top of the Chicago Public School league as well as ranked near the top ten of high school teams within the entire state of Illinois. Plaintiff was an important part of the team, a starter and one of the faces of the program. This provided Plaintiff with exposure to colleges, and from the Defendants' perspectives provided increased publicity and elevated the reputation, notoriety, and name recognition of the school.

10. On December 11, 2019, head basketball coach Pat Gordon ("Gordon") informed the basketball team that a planned trip to Florida for basketball tournament had been cancelled due to logistical issues.

11. On December 12, 2019, Gordon informed the team they would instead play in the Motor City Roundball Classic in Detroit, Michigan, between December 27 and 29, 2019.

12. Upon information and belief, Gordon submitted paperwork to CPS regarding the trip; but due to it being submitted late, it was not approved.

13. Nonetheless, the Lincoln Park High School officials including John Thuet, ("Thuet") interim principal of Lincoln Park High School, knew about and authorized the trip.

14. The basketball team arrived in Detroit on December 27, 2019, and played games that day and the following day. Updates on the team and scores of the games were reported on the LPHS Basketball twitter feed, an account that claimed to be associated with the team.

15. Copies of the tweets in question are attached as Exhibit A to the Complaint.

The Sexual Misconduct.

16. On the evening of December 28, 2019, three members of the basketball team had sex with the team's female manager, Jane Doe. Jane Doe was a minor.

17. Jane Doe consented to having sex with one of the boys (a minor) (hereinafter referred to as "John Doe II") but was unaware he switched places with two other boys (also minors). (Hereinafter referred to as "John Doe III" and "John Doe IV"), and thus was unable to consent to sex acts with those two other boys.

18. A video was recorded of at least some part of this sexual encounter with Jane Doe. That video was shared amongst students on Instagram.

19. Also, on the evening of December 28, 2019, Plaintiff and his roommates failed to respond to a door check by an assistant basketball coach of the team.

20. The following morning, two of the boys who engaged in sex acts with Jane Doe told members of the basketball team of their sexual contact with Jane Doe and bragged that Jane Doe did not know that John Doe III and John Doe IV had engaged in sexual activity with her.

21. At practice later that same morning, Plaintiff, and his father, were informed that he was removed from the starting lineup for failure to respond to a door check by an assistant coach of the team. Plaintiff was one of three student-athletes in the room when Coach Pryce made his door check. Plaintiff was only student that was punished, not the other student athletes.

22. Another individual, John Doe V, was suspended for two games, for failing to respond to a door check as well.

23. Later that day during a car ride to a restaurant John Doe V informed his father, and Plaintiff informed his father, that three members of the basketball team had sex with Jane Doe and that Jane Doe was unaware of having had sex with two of those individuals.

24. At the same time, Marcus Spencer ("Spencer") drove at least one of the three team members who had engaged in sexual activity with Jane Doe to the same restaurant.

25. During that drive, Spencer learned that the three boys about engaged in sex with Jane Doe.

26. Upon information and belief, he also learned that there was a video made of the sexual misconduct.

27. At the restaurant, Spencer stated to Plaintiff's father that John Does II, III, and IV had sex with Jane Doe. While that was known, Spencer did not report the incident (including the fact that there were minors involved, and which involved a video tape), and John Does II, III and IV had no suspension from any games. None of these players were suspended from any games.

Report of the Misconduct

28. On December 30, 2019, John Doe V's father left a message reporting the sexual misconduct perpetrated against Jane Doe to CPS' Office of Student Protection (hereinafter "OSP").

29. On December 31, 2020, Plaintiff's father emailed John Thuet, Interim Principal of Lincoln Park High School, on behalf of himself and Plaintiff and John Doe V's father, requesting a meeting about the sexual misconduct in Detroit.

30. A copy of that email is attached as Exhibit B to the Complaint.

31. On January 2, 2020, Plaintiff's father and John Doe V's father met with Thuet to discuss the sexual misconduct in Detroit.

32. At this meeting, Thuet informed Plaintiff's father and John Doe V's father that the Detroit trip was not a school authorized trip.

33. In a follow up email, Thuet informed Plaintiff's father and John Doe V's father that he had submitted his report to OSP on January 3, 2020.

34. In that email, he indicated that OSP was unsure if the report could be kept anonymous.

35. A copy of that email is attached as Exhibit C to this Complaint.

36. The following week, OSP began an investigation into the sexual misconduct.

37. Plaintiff was interviewed by OSP. OSP did not notify his parents of the time or place for the interview, nor provide them with an option of appearing in person with their minor child in such a stressful circumstance. Instead, his father, who was at work and had to excuse himself from a meeting, was on the phone during his interview.

38. On January 9, 2020, Thuet sent a letter informing parents of basketball team members that the basketball team had taken an unauthorized trip to Detroit, the staff person who organized the trip had been removed from his position, and Donovan Robinson would be named interim coach of the basketball team.

39. A copy of that letter is attached as Exhibit D to the Complaint.

40. Although not identified by name, the removed individual was Gordon.

41. Despite being removed from his position, Gordon continued to communicate with the basketball team by text message as well as with other Lincoln Park administration.

42. Plaintiff's father informed Thuet of these text messages via email on January 13, 2020.

43. A copy of the email sent, and text messages are attached as Exhibit E to this complaint.

Harassment and Retaliation.

44. At some point prior to January 8, 2020, Gordon revealed to one or more of the basketball team members that Plaintiff was involved in revealing the sexual misconduct to OSP. Gordon and others told the basketball team to deny the allegations and not to cooperate with the investigation. Other Lincoln Park basketball coaches were present as well, and expressly and/or impliedly ratified the actions and directives of Gordon.

45. Thuet was aware of these communications and either did not report them to his supervisors or if he did, his supervisors, which include Laura LeMone ("LeMone"), Chief of Schools for Network 14, took no actions to protect Plaintiff.

46. On January 8, 2020, prior to a game against North Lawndale, Robinson informed Plaintiff that he was not playing due to Gordon's suspension that emanated from the report of the sexual misconduct. Robinson also stated that Gordon didn't have confidence in him.

47. These statements were contrary to Gordon's prior conversations and actions regarding Plaintiff. For example, prior to the reporting of the sexual misconduct, Plaintiff was a starter on the team, and started every game, playing significant minutes in every basketball game prior to the event and was told that he was improving.

48. Plaintiff's father shortly thereafter informed Lincoln Park Administrators of the harassment, which the entire coaching staff was aware of, thus putting CPS on notice.

49. Subsequently, Plaintiff played approximately eight minutes over a total of seven games after reporting the sexual misconduct.

7

50. On January 10, 2020, Robinson informed the team that Plaintiff and John Doe V had reported the sexual misconduct.

51. After that, in addition to being essentially benched, Plaintiff also began experiencing significant isolation from the members of the basketball team.

52. Upon information and belief, OSP learned that there was student on student retaliation and harassment on January 10, 2020, or at latest, January 16, 2020.

CPS Response to the Harassment.

53. As Plaintiff's father grew increasingly alarmed about the toxic nature of the basketball team and the impact on Plaintiff, including harassment and threats Plaintiff received from his teammates, the manner in which the issues that arose during the Detroit trip were being addressed, he arranged a call with Thuet and John Doe V's father on January 17, 2020.

54. During the call with Thuet, Plaintiff's father discussed with Thuet of the threats that Plaintiff received, as well as the harassment directed towards them.

55. Plaintiff's father informed Thuet that as a result of the harassment and its impact on Plaintiff, he was considering transferring Plaintiff.

56. Although, Thuet was fully informed of the retaliation against and harassment of Plaintiff, Thuet declined to take any action specific action, including any action in opposition to the reduction in playing time, and downplayed the retaliation and harassment in reporting to OPS thereby condoning the retaliating and harassment and allowing it to continue and leaving Plaintiff to further be victimized and traumatized from the reporting of the incident of sexual misconduct.

57. Despite being informed, CPS took no action.

58. CPS and Thuet's inactions resulted in a violation of CPS' anti-bullying policy. A correct copy of the policy is attached as Exhibit F to this complaint.

59. In a January 21, 2020, follow-up email, Plaintiff's father informed Thuet that he would be reaching out to OSP regarding this harassment.

60. A copy of that email is attached as Exhibit G to this complaint.

61. January 21, 2020, Plaintiff's father sent an email to Aneita Williams, CPS Title IX Officer of Sports ("Williams") regarding the harassment discussed with Thuet.

62. A copy of that email is attached as Exhibit H to the Complaint.

63. Williams responded on January 22, 2020, that the OSP would be looking into the harassment against Plaintiff.

64. One week later, after John Doe V's father had pursued the issue given the lack of response, CPS's OSP reached out to Plaintiff's father and John Doe V's father.

65. On January 30, 2020, OSP investigators met with Plaintiff's father and John Doe V's father.

66. At that time, via email and letter, OSP informed Plaintiff's father that they were opening an investigation into the harassment and retaliation against Plaintiff.

67. Copies of the letters and emails are attached as Exhibit I to this Complaint.

68. On January 31, 2020, Robinson was suspended and Thuet and Michelle Brumfield, the Assistant Principal at LPHS, were removed from their position for allegedly downplaying allegations of retaliation and harassment, involving both Plaintiff, John Doe V, and a number of students.

69. Also on January 31, 2020, the Lincoln Park boys' basketball season was cancelled.

9

70. On February 3, 2020, CPS held a community meeting in which basic details were given as to the investigations into harassment and misconduct and revealed that there were four ongoing investigations.

71. Thereafter, the verbal harassment against Plaintiff continued to escalate, and an online petition began to circulate to allow the boys' basketball season to resume.

The John Williams Show.

72. On February 4, 2020, Spencer appeared on the John Williams Show on WGN Radio with his attorney Richard Lenkov and a member of the basketball team.

73. On air, Spencer stated that CPS knew of the trip to Detroit for the Motor City Roundball Classic Tournament but did not approve of it because of paperwork being filed late.

74. Spencer denied having knowledge of any sexual misconduct on the trip.

75. Spencer further denied that harassment had taken place.

76. In denying the harassment had taken place, Spencer stated that CPS had only heard one side of the story.

Effects of the Harassment.

77. The harassment against Plaintiff and isolation from the basketball team continued to escalate after January 31, 2020.

78. As a result of this harassment, Plaintiff withdrew from Lincoln Park and transferred to another school, De La Salle Institute for his senior year.

79. De La Salle Institute does not use a weighted GPA, and as a result of Plaintiff's transfer, his GPA lowered considerably, which impacted his ability to be considered by and apply to elite secondary schools.

80. The lack of coach advocacy for Plaintiff because of his reporting of the harassment severely impacted Plaintiff's ability to receive college basketball scholarships. The retaliatory actions against Plaintiff eliminated his opportunity to receive the exposure to college basketball coaches and recruiters. Further, the lack of "game tape" hindered his ability to provide video to college basketball coaches or recruiters.

81. Plaintiff made efforts to reach out to his current college team, but without coach advocacy and lack of game tape, he was not even provided an interview or tryout.

CPS' Investigation Results

82. On June 23, 2020, LeMone released a letter to the Lincoln Park High School Community as a status update on the coaches that were removed from their position.

83. A copy of that letter is attached to Exhibit J to the Complaint.

84. On February 13, CPS indicated, through CCO LaTanya McDade, that the information shared on February 3, 2020, in an e-mail, specifically allegations against administrators, had been fully substantiated.

85. A copy of that email is attached as Exhibit K to the Complaint.

86. In both correspondences, LeMone and McDade indicated that CPS had substantiated multiple allegations of serious misconduct and admitted that such misconduct created significant and severe harm on individuals such as Plaintiff.

87. Further, given the serious misconduct, in the June 23, 2020, letter, LeMone indicated CPS would be proceeding with a termination hearing against Gordon, and indicated that Robinson and Larry Washington would return to their positions and receive training from the Network and OSP moving forward.

88. On February 13, 2020, CPS stated publicly that LPHS leadership minimized sexual misconduct and harassment relating to the Detroit trip.

89. At some point after February 13, 2020, Brian Thompson, lead Title IX specialist for OSP, informed Plaintiff's father that Plaintiff's claims of harassment against him had been fully substantiated.

## COUNT I
## AGAINST THE BOARD OF EDUCATION OF THE CITY OF CHICAGO
## TITLE IX RETALIATION

90. Plaintiffs reallege and reincorporate the facts alleged in paragraph 1-89, as if they were set forth here.

91. Plaintiff engaged in a protected activity under Title IX when he reported the sexual misconduct to CPS employees directly and through his father.

92. As a result of reporting the sexual misconduct, CPS employees and agents retaliated against Plaintiff by taking adverse action against him in one or more of the following ways:

   a. Robinson removed Plaintiff from his role as a starting player on the basketball team and received virtually no playing time for the remainder of the season;

   b. Gordon, Robinson, and other coaching staff condoned and even encouraged the harassment of Plaintiff by other members of the LPHS basketball team and LPHS students, as well as the concealment of the sexual misconduct which Plaintiff opposed; and

   c. Thuet concealed from his superiors/and or otherwise reported it to his superiors, but in either case nothing was done which acted to ratify and approve the harassment and retaliation of John Doe by coaching staff and students.

93. The acts of retaliation created significant pressure and emotional trauma on Plaintiff.

94. Furthermore, the loss of playing time and premature end of Lincoln Park's basketball season resulted in significant loss of exposure and damage to the future basketball prospects of Plaintiff.

95. Under these circumstances, and without coach advocacy and their willingness to assist Plaintiff, including the development of "game tape" for Plaintiff to demonstrate his abilities, Plaintiff's college scholarship prospects were significantly diminished.

96. The actions of concealment by the coaching staff and administration, the harassment by other basketball team members and LPHS students resulted in significant mental anguish to Plaintiff. Plaintiff was forced to move to a different school completely, having to leave to new school and face the trauma of a new year in a completely different learning and social setting without any friends or familiarity. Along with the unfamiliar environment, Plaintiff's GPA was artificially lowered which impacted his ability to receive both college admissions offers and additional scholarships.

97. The Board may be held liable for the actions of its employees and agents at CPS.

  WHEREFORE, Plaintiff demands judgment in an amount in to be established at trial for compensatory damages; punitive damages, plus costs, attorney fees, disbursements and other such relief as this Court deems fair and just.

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a trial by jury would be available. Fed. R. Civ. P. 38.

                                                   Respectfully Submitted,

                                                   */s/ Thomas G. Gardiner*
                                                   Thomas G. Gardiner
                                                   Attorneys for Plaintiff

Thomas G. Gardiner (Ill. Bar 6180243)
Hamza Jaka
Gardiner Koch Weisberg & Wrona
53 West Jackson Blvd., Suite 950
Chicago, Illinois 60604
P 312-362-0000
F 312-362-0440
tgardiner@gkwwlaw.com
hjaka@gkwwlaw.com


Michael Rachlis
RACHLIS DUFF & PEEL, LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
P. 312-733-3950
F. 312-733-3952
mrachlis@rdaplaw.net