**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 583** |
| | ) | |
| **THE BOARD OF EDUCATION** | ) | |
| **OF THE CITY OF CHICAGO,** | ) | |
| **A MUNICIPAL CORPORATION,** | ) | |
| **JOHN THUET, JOHN JOHNSON,** | ) | |
| **PAT GORDON, DONOVAN ROBINSON,** | ) | |
| **LAURA LEMONE, LATANYA MCDADE,** | ) | |
| **CAMIE PRATT, JANICE JACKSON,** | ) | |
| **XOCHILT ROJAS,** | ) | |
| **and DEBRA SPRAGGINS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:[1]

John Doe (not his real name) has filed suit against the Board of Education of the City of Chicago and John Thuet, John Johnson, Pat Gordon, Donovan Robinson, Laura LeMone, LaTanya McDade, Camie Pratt, Janice Jackson, Xochilt Rojas, and Debra Spraggins. Doe asserts claims under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681; 745 ILCS 10/9-102; and Illinois common law. Specifically, Doe asserts claims against the Board of Education for (1) retaliation for reporting an incident prohibited by Title IX (count one) and (2) indemnification of Chicago Public School

---

[1] This case was recently assigned to the undersigned judge when the judge to whom it was previously assigned was appointed to the court of appeals.

employees under 745 ILCS 10/9-102 (count two); against Rojas, Spraggins, Thuet, Johnson, LeMone, McDade, Pratt, and Jackson for willful and wanton concealment (count three); against Thuet, Johnson, LeMone, McDade, Pratt, Rojas, Spraggins, and Jackson for willful and wanton failure to supervise (count four); against Rojas, Spraggins, LeMone, McDade, Pratt, and Jackson for willful and wanton failure to protect (count five); against Thuet and Johnson for willful and wanton failure to protect (count six); against Gordon and Robinson for willful and wanton failure to protect (count seven); and against Thuet, Johnson, Gordon, and Robinson for intentional infliction of emotional distress (IIED) (count eight).

Defendants have moved to dismiss Doe's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants contend that Doe has failed to state a claim upon which relief may be granted, and alternatively that all individual defendants are entitled to immunity under various provisions of the Illinois Tort Immunity Act. For the following reasons, the Court denies the defendants' motions.

## Background

The facts as set out in this section are taken from Doe's amended complaint and attached exhibits. The factual background of this case arises from events during the 2019–2020 academic year. During that year, Doe was a student at Lincoln Park High School (LPHS), where he played on the boys' basketball team. During the 2019–2020 school year, Doe was a starter on the varsity team. In December 2019, the varsity basketball team participated in a basketball tournament in Detroit called the Motor City Roundball Classic. At the time, defendant Pat Gordon was the team's head coach. Though Gordon submitted paperwork to Chicago Public Schools (CPS) requesting

permission for the Detroit trip, the trip was not approved because the paperwork was submitted late. Regardless, LPHS officials, including then-interim principal John Thuet, authorized the trip. The varsity basketball team played in the tournament, which was held on December 27 and 28.

On the evening of December 28, 2019, three members of the basketball team had sexual contact with the team's female manager, referred to in the complaint as Jane Doe. All these individuals were minors at the time. Though Jane Doe had consented to have sex with one of the boys (hereinafter John Doe II), she was unaware that two other boys (hereinafter John Doe III and John Doe IV) had switched places with Doe II. Jane Doe was also unaware that a video recording had been made of the sexual encounter, which was subsequently shared with other LPHS students. The following morning, December 29, two of the boys involved told other members of the basketball team about the sexual misconduct, including that Jane Doe did not know Doe III and Doe IV had engaged in sexual contact with her. Later that day, plaintiff Doe and another member of the team, John Doe V, separately informed their fathers of the sexual misconduct.

On December 30, 2019, Doe V's father reported the sexual misconduct to CPS's Office of Student Protection (OSP). The next day, December 31, plaintiff Doe's father e-mailed Thuet requesting a meeting to discuss the sexual misconduct allegation. Doe's father, Doe V's father, and Thuet met on January 2, 2020, and discussed the events that transpired on the Detroit trip. On January 3, Thuet e-mailed the boys' fathers to inform them he had submitted a report regarding their conversation to OSP.

On January 3, 2020, Debra Spraggins, OSP's director of investigations, received notice of the sexual misconduct and assigned OSP investigator Xochitl Rojas to the

matter. OSP began investigating the reported sexual misconduct the following week. As part of this investigation, John Doe was interviewed without OSP notifying his parents or providing them with an opportunity to attend the interview in person. Instead, Doe's father attended the interview by phone, as he was at work and could not leave.

On January 9, Thuet sent a letter to parents of the basketball team regarding the Detroit trip and its aftermath. In this letter, Thuet explained that the trip was not a school sponsored event, that the staff member who led the trip had been removed from their position, and that the district was investigating the matter. Though the letter does not identify the staff member by name, the removed individual was head basketball coach Gordon. Gordon was replaced by interim coach Donovan Robinson.

Gordon, despite being removed from LPHS, continued to communicate with various members of the basketball team, parents of basketball team members, and LPHS administrators via text messages. Gordon revealed to one or more members of the basketball team that Doe had reported the sexual misconduct and instructed these members to deny the allegations and not cooperate with OSP's investigation. Although the precise date of this conversation is unknown, Doe contends that Gordon revealed this information before January 8, 2020. On January 8, prior to a basketball game, Robinson informed John Doe that he would not be playing that evening. Robinson told Doe that "because of Plaintiff's report and the ultimate termination of Gordon, Robinson didn't have confidence in him." First Am. Compl. ¶ 51. On January 10, Robinson revealed to the entire basketball team that Doe and Doe V had reported the sexual misconduct. As a result, Doe became isolated from his teammates and began receiving harassing and threatening text messages.

4

According to the complaint, Rojas and Spraggins were informed that Doe was receiving threatening texts by January 16 at the latest. Rojas and Spraggins, however, took no action on investigating the matter until January 30. Thuet learned that Doe was receiving threatening texts during a January 17 phone call with Doe's father. During this same call, Doe's father informed Thuet that Doe had been removed as a starter and was facing retaliation from Gordon and Robinson for reporting the sexual misconduct. Doe's father told Thuet that, due to the impact of this retaliation, Doe was considering transferring schools. According to the complaint, Thuet took no action upon learning this information.

Due to inaction on the part of Thuet and OSP, Doe's father e-mailed Aneita Williams, the CPS Title IX Officer of Sports, on January 21, 2020 to inform her of the retaliation against Doe. Williams responded on January 22, advising Doe's father that OSP would be investigating the matter. Spraggins was copied on this e-mail. One week later, due to a lack of response from OSP, Doe V's father e-mailed Janice Jackson, then-Chief Executive Officer of CPS. After this follow up e-mail to Jackson, Doe and Doe V's fathers met with OSP investigators on January 30. The next day, January 31, Robinson was suspended as interim coach, and Thuet was removed from his position as interim principal. That same day, the LPHS boys' basketball season was cancelled.

On February 3, CPS held a community meeting and shared basic details on the investigation regarding the harassment and sexual misconduct. CPS informed attendees that a total of four investigations were ongoing. Following this meeting, verbal harassment against Doe continued to escalate, and an online petition began to

5

circulate seeking to resume the boys' basketball season.

On February 14, 2020, LaTanya McDade, CPS's Chief Education Officer, e-mailed the LPHS community stating that, though the investigations remained open, the allegations of adult misconduct have been fully substantiated. A pertinent section of this e-mail states:

> Based on extensive interviews with students, staff, and parents, the district determined that school administrators fostered a dangerous culture for students by disregarding their training and requirements for protecting students and failed to effectively oversee the school's athletic program. Most troublingly, when speaking with investigators, the administrators attempted to minimize the severity of the allegations, and withheld key evidence for nearly a week. An administrator also misled parents of the whistleblowers and falsely claimed that OSP and district officials had reviewed their child's allegations and considered it not troubling. Their mishandling of the situation and lack of candor jeopardized student safety, especially the students who came forward to report the allegations, and further traumatized student survivors.

First Am. Compl., Ex. K. At some point after this e-mail was sent, Brian Thompson, lead Title IX specialist for OSP, told Doe's father that the claims of harassment against Doe had been fully substantiated.

On June 23, 2020, Laura LeMone, Chief of Network 14 for CPS, sent a follow-up e-mail to the LPHS community. This e-mail confirmed that OSP had substantiated "multiple allegations of serious misconduct" regarding coaches at LPHS. First Am. Compl., Ex. J. Based on the findings of their investigation, CPS "decided to file dismissal charges and move forward with a termination hearing for Pat Gordon." *Id.* LeMone acknowledged that "misconduct was substantiated" against Robinson as well but determined that he could return to his position following additional training from OSP and Title IX. *Id.*

Due to this harassment, Doe withdrew from LPHS and transferred to De La Salle

6

Institute for his senior year. This transfer negatively impacted Doe's GPA due to a difference in how the two schools weigh grades. Doe was also deprived of the opportunity to receive support from his coaches in seeking collegiate basketball opportunities. This support includes lack of advocacy to college basketball coaches and recruiters and lack of compiling game tape to submit to college basketball programs. Doe has been told by college basketball coaches that they need such game tape "to make a full evaluation of [Doe]." First Am. Compl. ¶ 86. Doe has not made his college's basketball team.

### Discussion

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)(2) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When deciding on a motion to dismiss under Rule 12(b)(6), the Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024). Courts,

7

however, "are not bound to accept as true a legal conclusion couched as factual assertion." *Iqbal*, 556 U.S. at 678 (citation omitted). The Court, when considering a 12(b)(6) motion to dismiss, "is restricted solely to the pleadings, which consists generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 753 (7th Cir. 2002).

## A. Claims against Board of Education

The Board of Education moves to dismiss counts one and two of Doe's first amended complaint. For the following reasons, the Court denies the Board's motion.

### 1. Title IX retaliation

Doe first asserts a claim against the Board for retaliation for reporting an incident prohibited by Title IX.

To successfully establish a claim for Title IX retaliation, a plaintiff must show that (1) he engaged in activity protected by the statute, (2) the school took materially adverse action against him, and (3) there is a but-for connection between the two. *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). A materially adverse action is one that would dissuade a reasonable person from engaging in the activity protected under Title IX. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 696 (7th Cir. 2017). "Not everything that makes an [individual] unhappy is an actionable adverse action. . . . [I]t does not include those petty slights or minor annoyances that often take place . . . ." *Id.*

The Board contends that Doe has failed to plead that he suffered any materially adverse action. This argument fails for multiple reasons, primarily the fact that Doe contends he transferred schools because of the retaliation. Doe further alleges that he

faced threats and harassment from students as well as school administrators over the course of several months, he was removed as a starter, and he did not receive support when applying to college basketball programs. Accordingly, Doe has alleged facts sufficient to survive a motion to dismiss.

As a separate matter, it is unclear given recent Supreme Court case law whether the plain language of Title IX requires Doe to show a *materially* adverse action, as opposed to *any* adverse action. In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court held that, under the plain language of Title VII, a plaintiff bringing a discrimination claim is not required to show that "the harm incurred was significant. Or serious, or substantial, or any similar adjective suggesting that the disadvantaged employee must exceed a heightened bar." *Id.* at 355 (citations and quotation marks omitted). Though *Muldrow* was interpreting Title VII, and this case involves Title IX, the manner in which the Seventh Circuit has constructed Title IX to require showing a *materially* adverse action to bring a successful retaliation claim runs contrary to the logic invoked by Justice Kagan in her opinion for the Court in *Muldrow*. *See id.* ("Discriminate against means treat worse, here based on sex. But neither that phrase nor any other says anything about how much worse.") (citation and quotation marks omitted).

## 2. Indemnification

Doe asserts that the Board is required to indemnify the individually named defendants as employees of CPS pursuant to 745 ILCS 10/9-102: "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." The Board contends that

9

Doe has failed to plead any state-law claims against the individual defendants, and thus section 9-102 is inapplicable. Because the Court denies the individual defendants' motions to dismiss certain claims against them, and these are alleged to have been employees acting within the scope of their employment at the time of the alleged retaliation, the Court likewise denies the Board's motion to dismiss count two.

### 3. Claims against individual Board defendants

Doe asserts claims of willful and wanton concealment, willful and wanton failure to supervise, and willful and wanton failure to protect against LeMone, McDade, Pratt, Jackson, Rojas, and Spraggins (the Board defendants). Willful and wanton conduct is regarded as an aggravated form of negligence and requires a plaintiff to plead a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the breach was the proximate cause of the plaintiff's injury. *See Krywin v. Chi. Transit Auth.*, 238 Ill. 2d 215, 235, 938 N.E.2d 440, 452 (2010). The heightened standard of willful and wanton conduct requires a plaintiff to allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe ex rel. Ortega-Piron v. Chi. Bd. of Educ.*, 213 Ill. 2d 19, 28, 820 N.E.2d 418, 423 (2004).

Courts determine whether conduct is willful and wanton on a case-by-case basis, as "[w]illful and wanton conduct is not a static concept" but instead "exists along a continuum." *Winfrey v. Chi. Park Dist.*, 274 Ill. App. 3d 939, 944, 654 N.E.2d 508, 512 (1995). "Willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness." *Doe v. Village of Arlington Heights*, 782 F.3d 911, 920 (7th Cir. 2015). At its core, willful and wanton conduct implies that "the act was done

with actual intention or with conscious disregard or indifference for the consequences when the known safety of other persons was involved. The knowledge concerning other persons can be actual or constructive," and culpability generally falls between "ordinary negligence and actual malice." *Winfrey*, 274 Ill. App. 3d at 944–45, 654 N.E.2d at 513.

The Board defendants contend that Doe has failed to plead facts sufficient to support any of his claims against them. In the alternative, the Board defendants assert that they are entitled to immunity under the Tort Immunity Act as "employee[s] of a local public entity," qualifying them for immunity as "public employee[s]." 745 ILCS 10/1-207. The Court addresses each argument in turn.

### a. Willful and wanton concealment

Doe asserts a claim against LeMone, McDade, Pratt, Spraggins, and Rojas for willful and wanton concealment due to their failure to promptly open an investigation after he reported harassment and retaliation by LPHS administrators and students. Doe contends that the Board defendants knew teachers and students were retaliating against him and that their delay in opening an investigation shows deliberate indifference to the risk of harm he was facing. The Board defendants contend that Doe has not alleged facts establishing the requirements for a willful and wanton concealment claim.

The Court concludes that Doe has alleged facts sufficient to maintain count three against LeMone, McDade, Pratt, Spraggins, and Rojas. Doe contends that the Board defendants learned of the retaliation and harassment as early as January 3 when Thuet submitted his initial report to OSP and at the latest by January 16. In particular, despite

allegedly knowing that there was student-on-student retaliation and harassment by January 16, 2020—conduct that they could expect would continue unless checked—the defendants allegedly sat on the information for two weeks before opening an investigation.  As a result, Doe alleges, he faced increasingly hostile harassment.  These facts are sufficient to support a plausible inference that in withholding information, defendants were indifferent to the likelihood of harmful consequences to Doe.  For these reasons, the Court declines to dismiss count three.

### b.  Failure to supervise

Doe next asserts a claim against the Board defendants for willful and wanton failure to supervise.  Specifically, Doe alleges that the Board defendants failed to train and supervise LPHS administrators working with the boys' basketball team to ensure they followed Title IX protocol and school policy regarding how to handle reports of sexual misconduct and protect whistleblowers against retaliation.  Doe asserts that the Board defendants' failure to supervise LPHS employees created an environment where Thuet, Johnson, Gordon, and Robinson felt empowered to disregard Title IX training and protocol, minimize the nature of the retaliation against him, and withhold important information from OSP.  Again, the Board defendants contend that Doe has failed to sufficiently plead facts to establish any of the required elements of this claim.

To sustain a claim for willful and wanton failure to supervise, Doe must show that, in addition to satisfying all the elements listed above for willful and wanton conduct, the Board defendants "engaged in a course of action that proximately caused the plaintiff's injuries, including having prior knowledge of similar incidents."  *Sterling v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, No. 19 C 5599, 2021 WL 809763, at *8

(N.D. Ill. Mar. 3, 2021) (citation and quotation marks omitted).

Though Doe's complaint does not supply detailed facts showing that the individual Board defendants had prior knowledge of the alleged harassment, it does include factual allegations indicating that each Board defendant, at various times, was made aware of the threats and retaliation Doe was facing from school administrators and other students. The e-mail circulated by McDade on February 14, 2020, includes a statement that "school administrators fostered a dangerous culture for students by disregarding their training and requirements for protecting students" and that the school administrators' "mishandling of the situation and lack of candor jeopardized student safety." First Am. Compl., Ex. K. Without the benefit of discovery, it would be difficult for Doe to know precisely what part each Board defendant may or may not have played in mishandling the situation. But he has alleged facts sufficient to allow this claim to proceed. The Court declines to dismiss count four.

### c. Failure to protect

Doe also asserts a claim against the Board defendants for willful and wanton failure to protect. Doe alleges that the Board defendants unreasonably delayed investigating the harassment against him despite having knowledge that he was facing threats and retaliation from LPHS administrators and students. Doe also contends that the Board defendants failed to protect his identity from being leaked despite knowing that revealing his identity as the whistleblower would result in retaliation. Defendants again assert that Doe has failed to allege facts showing all the elements of a willful and wanton failure to protect claim.

A common law duty to protect can arise when there is a special relationship

13

between the parties. *See Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). "[A] school district with unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect." *Id.* at 515.

Doe's complaint includes facts that, if taken as true, plausibly show each of the Board defendants engaged in willful and wanton failure to protect. The Board defendants are all alleged to have had specific knowledge of the escalating retaliation Doe was facing, including that this harassment was coming from Doe's coaches, not just fellow students. Doe and Doe V's fathers repeatedly corresponded with various Board defendants, as shown by the exhibits attached to the complaint. As discussed in connection with count three, the Board defendants first learned of the sexual misconduct on January 3 and were informed of the whistleblower retaliation against Doe on January 16. The Board defendants, however, allegedly did not initiate an investigation until two weeks later, on or about January 30. Doe also alleges that the Board defendants failed to protect his anonymity, which opened him up to more widespread retaliation from his teammates. *See* First Am. Compl., Ex. H (e-mail to OSP describing "[t]hreatening text messages" sent in the boys' basketball team chat). This is sufficient to state a claim against each of the Board defendants. The Court thus declines to dismiss count five.

## B. Claims against Thuet, Johnson, Gordon, and Robinson

### 1. Willful and wanton concealment and failure to supervise claims against Thuet and Johnson

Doe asserts claims against Thuet and Johnson for willful and wanton concealment and failure to supervise. The Court earlier described the standard for

successfully asserting a willful and wanton concealment claim. The Court finds that Doe has alleged facts regarding Thuet and Johnson sufficient to survive a motion to dismiss.

Regarding the concealment claim, Doe contends that Thuet and Johnson misconstrued facts and withheld key evidence from OSP. Doe's complaint outlines the timeline of his reporting of the sexual misconduct and Thuet and Johnson's responses. Further, the February 14 e-mail from McDade states that "when speaking with investigators, the [LPHS] administrators attempted to minimize the severity of the allegations, and withheld key evidence for nearly a week." First Am. Compl., Ex. K. Doe has sufficiently alleged that Thuet and Johnson willfully and wantonly withheld significant facts and thereby caused him injury. Though Johnson, as dean of LPHS, may have had duties and knowledge different from Thuet, the complaint and attached exhibits support a plausible claim that Johnson was one of the school administrators who participated in minimizing the severity of the sexual misconduct allegations and withholding evidence from OSP.

Turning to the failure to supervise claim, again the pleadings and attached exhibits provide a sufficient basis to allow Doe's claim to proceed. McDade's e-mail states that school administrators "failed to effectively oversee the school's athletic program." *Id.* This determination was based on "extensive interviews with students, staff, and parents." *Id.* Doe has not had the same benefit to conduct such extensive interviews, but based on the information in Exhibit K, it is plausible that Doe will be able to establish that Thuet and Johnson failed to effectively oversee the boys' basketball program and supervise how Gordon and Robinson addressed the harassment and

retaliation faced by Doe.

For these reasons, the Court denies Thuet and Johnson's motion to dismiss counts three and four.

### 2. Willful and wanton failure to protect

Doe asserts in counts six and seven claims against Thuet, Johnson, Gordon, and Robinson for willful and wanton failure to protect. For reasons similar to those outlined above, the Court denies the defendants' motion to dismiss counts six and seven. Specifically, McDade's e-mail pointedly states that school administrators disregarded training, downplayed the severity of the incident, withheld evidence, and "misled parents of the whistleblowers and falsely claimed that OSP and district officials had reviewed their child's allegations and considered it not troubling." *Id.* As a result, according to McDade's e-mail, LPHS administrators "jeopardized student safety, especially the students who came forward to report the allegations"—in other words, Doe and Doe V. *Id.* These allegations are sufficient to state a claim for relief.

### 3. Intentional infliction of emotional distress

Doe also asserts an IIED claim against Thuet, Johnson, Gordon, and Robinson. The defendants contend that Doe has failed to plead facts showing the requisite level of conduct and harm.

To state a claim for IIED, a plaintiff must plead facts showing that (1) the conduct involved is "truly extreme and outrageous," (2) the conduct was done with either the intention of causing severe emotional distress or with knowledge that there is "at least a high probability that [the] conduct will cause severe emotional distress," and (3) "the conduct . . . in fact cause[d] *severe* emotional distress." *McGrath v. Fahey*, 126 Ill. 2d

16

78, 86, 533 N.E.2d 806, 809 (1988).  Though IIED claims do not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," assessing "the 'outrageousness' requirement is necessarily difficult due to its vagueness." *Id.* (citation omitted).  "[T]he degree of power or authority which a defendant has over a plaintiff" is one factor when considering the outrageousness of a defendant's conduct; "[t]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous." *Id.*; *see also Milton v. Ill. Bell Tel. Co.*, 101 Ill. App. 3d 75, 79, 427 N.E.2d 829, 832 (1981) ("The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests.") (citation and quotation marks omitted).  School administrators have been identified as specific actors "who may be positioned to exercise power or authority over a plaintiff." *McGrath*, 126 Ill. 2d at 87, 533 N.E.2d at 810.

Doe's complaint sufficiently states a claim for IIED.  The facts alleged by Doe, taken as true as required on a motion to dismiss, support a plausible contention that Thuet, Johnson, Gordon, and Robinson all used their positions of authority over Doe to permit and perpetuate harassment and retaliation against him for reporting the sexual misconduct.

Specifically regarding Thuet, the interim principal at the time, Doe contends that Thuet was informed of the sexual misconduct, as well as the harassment Doe was experiencing as the whistleblower, on January 3, 2020.  Thuet, however, did not report this to OSP.  Instead, Doe alleges, Thuet instructed Johnson "to bring the accused and the whistleblowers together in a meeting" despite such action being "in direct violation of

17

district policy and best practices." First Am. Compl. ¶ 157. Thuet is also alleged to have been aware as of January 13 that Gordon was continuing to contact members of the basketball team, their parents, and other school administrators despite having been removed from his position as head coach. Thuet also was allegedly made aware on January 17, 2020 that Doe was facing harassment and threats from his teammates. Doe alleges that Thuet took no action despite this.

Regarding Gordon and Robinson, Doe alleges they both knew of and encouraged the harassment from other players. Doe contends that Gordon leaked Doe's identity to Robinson, who in turn revealed it to the other members of the basketball team. Robinson removed Doe as a starter and allegedly told the entire basketball team that Doe was one of the whistleblowers. Gordon and Robinson are also alleged to have refused to help Doe compile game tape or reach out to college basketball coaches and recruiters, and they are claimed to have conveyed to Doe that they did so because of Doe's reporting of the sexual misconduct.

Regarding the second and third elements of an IIED claim, Doe's complaint pleads facts sufficient to survive a motion to dismiss. Specifically, Doe alleges that Thuet, Johnson, Gordon, and Robinson were aware that Doe, a minor under their supervision, was facing harassment—including threatening texts and messages—because of his reporting of the sexual misconduct. *See* First Am. Compl., Ex. F. According to the complaint, Doe was isolated from his classmates and removed as a starter from the varsity basketball team. Doe was told directly that his coaches "didn't have confidence in him" and that this loss of confidence stemmed directly from his decision to report the sexual misconduct. First Am. Compl. ¶ 51. The harassment and

retaliation became so extreme, Doe alleges, that he transferred to a different school. At the time, Doe was a seventeen-year-old boy whose life revolved around basketball. Doe has alleged facts sufficient to plausibly support a claim that Thuet, Johnson, Gordon, and Robinson intended or knew of the high likelihood that their actions taken in response to Doe's reporting of the sexual misconduct would cause Doe severe emotional distress. The complaint likewise supports a plausible inference that Doe's emotional distress was severe, as it caused him to transfer schools for his senior year. Accordingly, the Court denies defendants' motion to dismiss count eight.

## C.     Immunity under the Tort Immunity Act

In the alternative, all defendants contend that they are entitled to immunity as governmental employees under various provisions of the Tort Immunity Act. The Court overrules these contentions, as the arguments for immunity under the Act have not been sufficiently developed. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor [the court of appeals] are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."). The burden of proof to establish an immunity defense lies with the governmental employees seeking immunity, and "[i]t is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003).

In particular, the defendants seek immunity under section 2-202 of the Tort Immunity Act, which states: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The Tort Immunity Act's definition of willful and

wanton is similar to the definition used by the Illinois Supreme Court. *Compare* 745 ILCS 10/1-210 (defining willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property") *with Doe ex rel. Ortega-Piron*, 213 Ill. 2d at 28, 820 N.E.2d at 423 ("To plead willful and wanton conduct, a plaintiff must allege either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff.").  Because the Court has determined that Doe has sufficiently alleged willful and wanton conduct, this defense does not carry the day on a motion to dismiss.

The defendants also seek immunity under sections 2-201 and 2-205 of the Tort Immunity Act.  Section 2-201 states:  "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201.  Section 2-205 states: "A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." 745 ILCS 10/2-205.  Sections 2-201 and 2-205 do not contain an exception for willful and wanton conduct.  Defendants contend that they qualify for immunity under section 2-201 as they were engaging in the exercise of discretion when responding to Doe's retaliation claim; they seek immunity under section 2-205 because Doe contends the defendants failed to enforce the requirements of Title IX.  Defendants' arguments for immunity under these sections fail.  The relevant question on Doe's state-law tort claims is not whether the defendants were exercising discretion or failing to enforce Title IX

when responding to Doe's complaint of retaliation; rather, the question is whether defendants breached state common law duties to Doe, which is what gives rise to the state law tort claims against the individual defendants.

Separately, the Court overrules defendants' argument that they are entitled to immunity under section 4-102 of the Act. Section 4-102 relates to failure to provide *police* protection. Here, Doe is not contending that defendants failed to provide police protective services, but rather that they breached their duty to protect Doe from harassment and retaliation from school administrators and students. Thus section 4-102 is inapplicable.

## Conclusion

For the reasons stated above, the Court denies the defendants' motions to dismiss [dkt. nos. 59, 61, 62]. The defendants are directed to answer the amended complaint by no later than September 25, 2024. The stay of discovery is lifted. Rule 26(a)(1) disclosures are to be made by October 2, 2024. The parties are directed to confer regarding a discovery and pretrial schedule and are to file a joint status report with a proposed schedule by September 18, 2024. The Court sets the case for a telephonic status hearing on September 24, 2024 at 9:15 a.m. The following call-in number will be used: 888-684-8852, access code 746-1053.

Date: September 4, 2024

_____

MATTHEW F. KENNELLY
United States District Judge